185 N.J. Super. 373 (1982)
448 A.2d 1030
ESB, INC., PLAINTIFF,
v.
ROBERT J. FISCHER AND JOAN S. FISCHER, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Mercer County.
Decided April 26, 1982.
*375 Robert P. Clark appeared for plaintiff (Clark, Gertler & Hanna, attorneys).
Charles J. Casale, Jr. appeared for defendant Joan S. Fischer.
DREIER, J.S.C.
Plaintiff ESB, Inc. seeks first to set aside an alleged fraudulent conveyance by defendant Robert J. Fischer to his wife Joan, next to execute upon defendant husband's interest in the real estate, and finally to have the property sold in a partition sale. Defendants contend that the husband's interest in the property, originally held by the Fischers as tenants by the entirety, was validly transferred to the wife and thus is immune from plaintiff's claim.
In this summary judgment motion the court must accord defendants all reasonable inferences that can be gleaned from their affidavits and certifications. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 77 (1954); R. 4:46-1. Applying this principle, the following appears: Prior to September 1976 defendant husband had converted substantial quantities of plastic tape from plaintiff, his then employer. When the theft was discovered, defendant was fired and soon thereafter was indicted and convicted. In March 1980 plaintiff, in a separate civil suit, obtained an $80,000 judgment against defendant. This judgment was uncollectable, however, as it was subsequently discovered that shortly after his indictment defendant had conveyed his sole asset, namely his interest in the subject *376 premises (which interest is acknowledged to be worth approximately $22,000, net of mortgage), to his wife for a recited consideration of one dollar. Plaintiff then commenced this action to set aside the real estate transfer under N.J.S.A. 25:2-3, alleging the same to have been fraudulent.

I
Under the Fraudulent Conveyance Act, N.J.S.A. 25:2-3, a transfer made with the intent to "hinder, delay, or defraud creditors" may be set aside, notwithstanding any "feigned consideration." Likewise, under the Uniform Fraudulent Conveyance Act,[1]N.J.S.A. 25:2-15, a creditor who has reduced his claim to judgment may set aside a transfer of real estate by the debtor to a third party, unless the transfer is supported by "fair consideration." This latter phrase has been defined in N.J.S.A. 25:2-9 as follows:
Fair consideration is given for property or obligation:
a. When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or
b. When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.
Transfers between close relatives are at best viewed with suspicion. See Coles v. Osback, 22 N.J. Super. 358, 364 (App.Div. 1952); Haberstroh v. DeMarco, 2 N.J. Super. 429, 432 (Ch.Div. 1949). We must therefore carefully assess the adequacy of the consideration claimed by defendants. They contend that the consideration for the transfer of the real property from husband to wife was threefold: (1) the wife's agreement not to institute divorce proceedings; (2) the wife's desire to feel more secure with the home solely in her name and (3) satisfaction of the *377 husband's future support obligation to his wife and children in light of the wife's allegation that he had had a poor support record over the past years.
Accepting defendants' explanation of the consideration for the transfer (as this court must at this stage of the proceedings), does such consideration satisfy the statutory mandate? This court holds that it does not.
The first claim of consideration, the agreement by defendant wife not to institute divorce proceedings, is premised on an unenforceable agreement. This is not a case of mere condonation, where the wife agrees to let bygones be bygones in return for an interest in property and for the husband's promise to mend his ways and cease engaging in conduct that may constitute grounds for divorce. Rather, in this case, as counsel explained at oral argument, the alleged divorce grounds would have been extreme cruelty, based solely upon the husband's failure to provide adequate financial support for his family. This court must determine whether under the New Jersey Divorce Act, N.J.S.A. 2A:34-2, such failing, on the facts of this case, would rise to the level of extreme cruelty. Although condonation is no longer a defense in divorce actions, N.J.S.A. 2A:34-7, if the wife's agreement here amounted to a contractual waiver of a then assertable cause of action, adequate consideration for the husband's transfer would exist. Schenkel v. Schenkel, 8 N.J. Misc. 863, 864 (Sup.Ct. 1930).
Extreme cruelty is defined as
... Any physical or mental cruelty which endangers the safety or health of the plaintiff or makes it improper or unreasonable to expect the plaintiff to cohabit with the defendant.... [N.J.S.A. 2A:34-2(c)]
Here the wife apparently agreed that her husband could continue the same sporadic support pattern following the transfer of deed of the family residence to her as he had prior thereto. Her acknowledged ability to abide with this situation negates any claim of extreme cruelty as defined by the statute. Thus, as to this agreement, the wife gave up nothing that could *378 be regarded as "fair consideration" to defeat the rights of her husband's creditors.
The wife's second claim of consideration  her feeling of security in holding the property free of the husband's interest and the claims of his creditors  while a legitimate motive for her desire for the property to be in her name alone, is not "fair consideration" under the statute prohibiting fraudulent conveyances. 3 Williston, Contracts (3 ed. Jaeger 1970), § 111 at 439.
The third claim  the wife's relinquishment of the right to future support for herself and her children  is void as against public policy. Looking first at the wife's right to support, the potential for fraud is so great as to preclude such agreement from being sufficient consideration to defeat a fraudulent conveyance claim. The parties lived together both before and after the conveyance. The wife acknowledges that her husband provided such support as he was able both before the conveyance and thereafter. If, without any objective manifestation of a change in support arrangements, consideration for interspousal transfers could be based merely on a claim that the wife no longer looked to the husband for support, the Uniform Fraudulent Conveyance Act could be rendered nugatory in any stable family setting. As between husband and wife, the parties may agree that she will first look to her own resources and then to the husband's transferred interest in the property to satisfy a support claim; but where the rights of a third party, such as plaintiff here, are brought into question, a transfer of property from husband to wife based on a release of husband's obligation to support his wife cannot stand.
With respect to the children's right to support, this right does not belong to the husband or wife to bargain with. A parent's duty to support his or her children is a fixed and continuing obligation. N.J.S.A. 9:2-4; Grotsky v. Grotsky, 58 N.J. 354, 356 (1971); Turney v. Nooney, 21 N.J. Super. 522, 525 (App.Div. 1952); C. v. R., 169 N.J. Super. 168, 171 (Ch.Div. 1979). As with the wife's right to support, the parties may agree *379 between themselves where they will first look to satisfy their joint duty to support their children. But the parties may not allege any extinguishment of their children's support rights as consideration for a transfer of property between husband and wife.
Thus, in the absence of any adequate or "fair" consideration, the deed transfer by defendant debtor husband to his spouse must be set aside as a fraudulent conveyance as against plaintiff creditor.[2]

II
With the conveyance from husband to wife set aside vis-a-vis third-party creditors, defendants will be returned to their status as tenants by the entirety insofar as plaintiff is concerned. The question then remains as to plaintiff's position and its rights with respect to the husband's undivided half interest with right of survivorship in the family home. It is beyond dispute that "a debtor's interest in property held as tenant by the entirety may be reached by his or her creditors...." Newman v. Chase, 70 N.J. 254, 262 (1976). Newman articulated this principle in a case where a purchaser had already acquired from a trustee in bankruptcy the debtor's interest as a tenant by the entirety in homestead property. The court held that the estate the purchaser in fact acquired was a tenancy in common with the nondebtor spouse, for the joint lives of defendant debtor and his spouse, as well as the debtor's right of survivorship should the debtor outlive his wife. However, plaintiff here is neither a purchaser at an execution sale (see King v. Greene, 30 N.J. 395 (1959)) nor a purchaser from a trustee in bankruptcy (Newman v. Chase, supra). Plaintiff, rather, is merely a judgment creditor of defendant husband. *380 This court must therefore determine whether a forced sale of defendant's interest as a tenant by the entirety will best preserve the respective rights and accommodate the conflicting interests of the executing creditor, the debtor, and the family residing on the premises.
In fashioning an equitable remedy, this court determines that plaintiff creditor should receive the basic protections of a purchaser at a judgment sale. Requiring the formality of an execution sale, however, (at which plaintiff would undoubtedly be the only bidder, at a nominal figure because of the presence of the wife's right of survivorship), would most probably result in a large deficiency to be satisfied from some other assets of defendant. If this usual procedure were to be followed, the nondebtor spouse would be required to pay one-half the imputed rental value of the property to the creditor/cotenant, for her exclusive use and occupancy of the marital residence. Newman v. Chase, supra 70 N.J. at 266-267. The creditor would receive this income from its absolute but defeasible ownership of its interest in the home. In addition, the creditor would hold its deficiency judgment, which would rapidly increase by the accrual of interest of nearly $10,000 a year at the legal rate. Thus the existence of the reciprocal rights of survivorship essentially negates the effectiveness of the usual remedy of immediate judicial sale of the debtor's interest in the property.
In light of the flexibility granted to a court of equity to devise remedies, and the priority granted a levying judgment creditor, even without an actual sale (N.J.S.A. 2A:17-39; Vineland S. & L. Ass'n. v. Felmey, 12 N.J. Super. 384, 390-391 (Ch.Div. 1951); Pulawski S. & L. v. Aguiar, 174 N.J. Super. 42, 46 (Ch.Div. 1980)), this court will direct that a writ of execution shall be issued in favor of plaintiff as against defendant debtor's interest in the property. The writ of execution shall be the basis of an immediate levy by the sheriff upon the debtor's tenancy by the entirety, but no immediate sale shall be held. The levy shall be deemed continuously effective without the requirement of a sale of the property, thus according plaintiff an on-going priority *381 position as a levying judgment creditor. Only upon satisfaction of the judgment under the conditions described below, or upon defendant's husband's death, shall the execution be vacated.
For as long as the family continues in possession of its home, plaintiff's rights as to that property will be those enumerated in Newman: "Equity requires that appropriate payments made by the cotenant in possession be credited in calculating what is due the cotenant out of possession." 70 N.J. at 267-268. Mrs. Fischer will therefore be responsible for paying to plaintiff one-half of the imputed rental value of the house (less applicable expenses), to be credited against the unpaid amount of the judgment plus interest.
If Mrs. Fischer outlives her husband, by virtue of her right of survivorship she will succeed to full title in the property, free of plaintiff's interest, and the writ of execution will be discharged. Conversely, if the debtor husband outlives his wife, plaintiff's writ will permit it to initiate an immediate execution sale against defendant's then full ownership of the premises, and thus to satisfy the balance of the judgment from the entire amount of the proceeds of sale.
In the event defendant wife chooses to convey the property to a third party, plaintiff shall be entitled to one-half of the net proceeds up to the amount of the outstanding balance on the debt. If the parties divorce, thereby extinguishing the reciprocal rights of survivorship, or if the family situation otherwise changes so that the equitable considerations described in Newman no longer pertain, an execution sale may be authorized after application to this court, and the parties' rights adjusted as if the wife had voluntarily sold the property to a third party.
The net effect of this decision is to leave defendant's family unit in possession of the premises,[3] with plaintiff receiving a fair *382 return on its lien on defendant husband's interest. If, prior to the death of either of defendants, plaintiff is able to satisfy the outstanding portion of its judgment from other property of defendant, it shall satisfy the judgment of record. Such satisfaction of judgment shall stand as a relinquishment of the husband's right of survivorship that has passed to plaintiff.
Summary judgment in favor of plaintiff is hereby granted.
NOTES
[1] The Fraudulent Conveyance Act, § 25:2-1 to 25:2-6, was repealed by the Uniform Fraudulent Conveyance Act, § 25:2-7 to 25:2-17, only insofar as it is inconsistent therewith. Conway v. Raphel, 102 N.J. Eq. 531, 533 (E. & A. 1928); Persons v. Bergmann, 182 N.J. Super. 476 (App.Div. 1982).
[2] Although the transfer is void as to plaintiff, it remains valid as between husband and wife. Pope v. Bain, 8 N.J. Super. 263, 266 (App.Div. 1950), rev'd on other grounds 6 N.J. 351 (1951); Bankers Trust Co. v. Bank of Rockville, 114 N.J. Eq. 391, 398 (E. & A. 1933); Doughty v. Miller, 50 N.J. Eq. 529, 536 (Ch. 1892).
[3] See also N.J.S.A. 3A:35-5 which, in the inheritance context, is the Legislature's recent answer to the problem of family's home. The Statute reads, in part:

"... as to such real property occupied jointly with his or her spouse, as their principal marital residence every married person shall be entitled to joint possession with his or her spouse during their marriage, which right of possession may not be released, extinguished or alienated without the consent of both spouses except by judgment of a court of competent jurisdiction..."